In the Matter of the Application of ABN INTERNATIONAL CAPITAL MARKETS CORPORATION, now known as ABN AMRO Securities (USA) Inc., Petitioner,

For a Judgment Staying the Arbitration Commenced by Zwitserse Maatschappij van Levensverzekering en Lijfrente and N.V. Pensioen ESC, Respondents.

In the Matter of the Application of ZWITSERSE MAATSCHAPPIJ van LEVENSVERZEKERING en LIJFRENTE and N.V. Pensioen ESC, Counter-Petitioners,

For a Judgment Compelling Arbitration On the Part of ABN International Capital Markets Corporation, now known as ABN AMRO Securities (USA), Inc., Counter-Respondent.

No. 92 CIV 3379 (KC).

United States District Court,
S.D. New York.

Feb. 4, 1993.

John Kowal, Catherine Samuels, Schulte Roth & Zabel, New York City, for petitioner.

Robert E. DeRight, Jr., Epstein Becker & Green, New York City, for respondents.

## ORDER

CONBOY, District Judge:

Petitioner ABN International Capital Markets Corporation ("ABN CMC") (now

known as ABN AMRO Securities (USA) Inc.) has moved this Court to stay arbitration proceedings. In response, Respondents Zwitserse Maatschappij van Levensverzekering en Lijfrente ("ZwitserLeven") and N.V. Pensioen ESC ("ESC") have counter-moved to compel arbitration. After careful consideration, the Court finds that Respondents waived their right to arbitrate by initiating litigation and conducting substantial discovery that would not have been available in arbitration. Accordingly, ABN CMC's petition to stay arbitration is granted, and Respondents' counter-petition is denied.

### Background

On March 19, 1991, ZwitserLeven, a Dutch insurance company, and ESC, a pension fund it manages, submitted a Request for a Preliminary Witness Hearing ("Request for Hearing") to the District Court in Amsterdam, Holland. The Request for Hearing named ABN CMC, a registered broker/dealer with the National Association of Securities Dealers ("NASD") and a broker/dealer with the Securities and Exchange Commission, and Algemene Bank Nederland N.V. ("ABN") (ABN CMC's parent company) as adverse parties, and stated that ZwitserLeven and ESC "intend to file legal proceedings" against ABN CMC and ABN based upon the furnishing of incorrect and misleading information and advice in connection with the purchase of three bond issues. Request for Hearing, p. 1. On March 28, 1991, the Netherlands Court granted the Request for Hearing and initiated a proceeding (the "Netherlands proceeding").

Between June 21, 1991 and December 20, 1991, ZwitserLeven and ESC ("Respondents") called six witnesses, who provided statements before Examining Judge J.A.C. Bartels. Of the six individuals providing statements, two were employed by ABN CMC, two were employed by Respondent ZwitserLeven, and two were employed by ABN.

In addition to the testimony of the six witnesses named above, Respondents sought and received from ABN CMC the voluntary production of documents relevant to the bond purchases.[1] ABN CMC called no witnesses and did not seek the production of documents in the Netherlands proceeding.

On February 14, 1992, Respondents informed the Netherlands Court that they had no further witnesses to call. The preliminary hearing was subsequently closed.

On April 13, 1992, Respondents served a Demand for Arbitration and Statement of Claim on ABN CMC, demanding arbitration before the New York Stock Exchange ("NYSE"). On May 1, 1992, Respondents served an Amended Demand for Arbitration and Statement of Claim on ABN CMC, demanding arbitration before the NASD. This Amended Demand was identical to the original Demand, except for the designation of the arbitral forum.

On May 4, 1992, ABN CMC served on ZwitserLeven and ESC a Notice of Petition and Verified Petition to Stay Arbitration pursuant to Section 7503(b) of the New York Civil Practice Law and Rules. ZwitserLeven and ESC removed the proceeding to this Court on May 8, 1992.

In its application for a stay of arbitration, Petitioner ABN CMC has made three arguments. First, petitioner argues that ZwitserLeven and ESC have waived their right to submit the dispute to arbitration by commencing litigation in a judicial forum. Second, Petitioner maintains that Respondents are not entitled to arbitration because they are not parties to the customer agreement and they do not demonstrate the factual basis to satisfy the requirements of assignment. Third, Petitioner seems to claim that since Respondents originally moved to arbitrate their claim under

---

1. The Court notes that while technically "voluntary," the document production in the Netherlands proceeding carried its own incentives for compliance. Under Netherlands law, when a party refuses to produce documents requested in a legal proceeding, the Court can infer that the withheld documents contain evidence inconsistent with, and damaging to, the party's case. "Supplemental Declaration of H.G. Van Everdingen in Support of Petition to Stay Arbitration," June 9, 1992, p. 5.

the wrong section of the NASD Code of Arbitration Procedure, they should be denied access to the NASD forum.

### Discussion

 Petitioner argues that Respondents waived their right to arbitrate by commencing legal proceedings that involved discovery not permitted in arbitration. Under certain circumstances, a party that commences litigation may waive its right to arbitration.[2] *Sweater Bee by Banff v. Manhattan Industries,* 754 F.2d 457, 461 (2d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985). However, the Second Circuit has made clear that waiver "is not to be lightly inferred." *See Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985). As the Supreme Court stated in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.:*

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Mere delay in seeking arbitration will not constitute a waiver; there must be actual prejudice to a party as a result of the litigation. *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985). The party seeking to establish a waiver of arbitration carries a heavy burden. *See Tenneco Resins, Inc. v. Davy Intern., AG,* 770 F.2d 416 (5th Cir.1985). It cannot establish prejudice by inference alone but must make an affirmative showing of the harm it will suffer if arbitration is allowed to proceed. *See Mitsui & Co. (USA), Inc. v. C & H Refinery, Inc.,* 492 F.Supp. 115, 120 (N.D.Cal.1980).

In this case, Petitioner ABN CMC has fulfilled its affirmative duty of establishing actual prejudice. The Second Circuit has indicated that "[s]ufficient prejudice to infer waiver might be found … if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration." [3] *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 n. 7 (2d Cir.1968). *See Tenneco Resins, Inc. v. Davy Intern., AG,* 770 F.2d 416 (5th Cir.1985); *Russo v. Simmons,* 723 F.Supp. 220, 223 (S.D.N.Y.1989); *Lubrizol Intern., S.A. v. M/V Stolt Argobay,* 562 F.Supp. 565, 573 n. 11 (S.D.N.Y. 1982); *Liggett & Myers, Inc. v. Bloomfield,* 380 F.Supp. 1044, 1047–48 (S.D.N.Y. 1974). This is exactly what Respondents have done.

 During a period of six months, six witnesses testified under oath before Examining Judge J.A.C. Bartels in Amsterdam. Both sides had lawyers present during the testimony and could ask questions of the witnesses.[4] Schimmelpenninck's Affidavit, p. 7. The testimony of the witnesses went to the heart of the dispute Respondents are now seeking to arbitrate. Indeed, Petitioner claims, and Respondents do not contradict, that during the Nether-

---

**2.** Although ABN CMC initially filed its petition pursuant to New York CPLR 7503, federal law now determines whether arbitration should be stayed. *See Graphic Scanning Corp. v. Yampol,* 688 F.Supp. 857 (S.D.N.Y.1988), *aff'd,* 850 F.2d 131 (2d Cir.1988) (although petition to stay arbitration was initially brought under state law, federal law of arbitration applies to action removed to federal court, where contract involves interstate commerce). *See also Merrill Lynch, Pierce, Fenner & Smight Inc. v. Lecopulos,* 553 F.2d 842, 845 n. 4 (2d Cir.1977); *Barbier v. Shearson Lehman Hutton Inc.,* 948 F.2d 117, 120 (2d Cir.1991).

**3.** The Court notes that, in referring to the "party seeking the stay," the *Carcich* Court meant the party seeking to stay the litigation and compel arbitration. In contrast, in this case, Petitioner and Respondents use the verb "to stay" in the context of indicating Petitioner's motion to stay arbitration.

**4.** Under the rules of the Netherlands proceeding, after the testimony of each witness, the Examining Judge dictates a summary of the witness' answers to a clerk, who types the summary. The typed summary is then read aloud to the witness, who is asked if he or she agrees with it. If the answer is "yes," the witness is instructed to sign the statement. Schimmelpenninck's Affidavit, p. 6.

lands proceeding, Respondents obtained testimony of virtually all the witnesses likely to testify at arbitration. *See* "Petitioner's Supplemental Reply Memorandum in Support of Petition to Stay Arbitration," July 22, 1992, p. 2.[5]

The critical question before the Court is whether this discovery procedure, or its functional equivalent in the United States, a deposition, would be available in arbitration in New York. Both Respondents and Petitioner maintain that this discovery procedure would not be available with regard to the six witnesses from the Netherlands proceeding. *See* "Petitioner's Supplemental Reply Memorandum in Support of Petition to Stay Arbitration," July 22, 1992, p. 2. By Respondents' own admission, one of the main purposes of the preliminary witness hearings was:

> to preserve the testimony of witness[es] whose attendance at arbitration hearings in New York could not be compelled—to provide the contractually-compelled arbitration tribunal with information which ABN and ABN CMC might otherwise elect to withhold.

Respondents' "Memorandum of Law in Opposition to Petitioner's Application For a Stay of Arbitration and in Support of Respondents' Counter–Petition to Compel Arbitration" ("Memorandum of Law"), May 27, 1992, pp. 18–19. *See also* Respondents' "Counter–Petitioners' Reply Memorandum of Law in Further Support of Their Counter–Petition to Compel Arbitration"

("Counter–Petitioners' Reply Memorandum"), June 18, 1992 ("Indeed, the true 'prejudice' to ABN CMC is that it has not been able to prevent access to testimony by ABN-related Dutch based witnesses through continued manipulation of forum and venue. The Dutch preliminary witness hearings have, in truth and in fact, levelled the playing field." *Id.* at 8.). Such a purpose—to take advantage of a discovery procedure during litigation that would otherwise not be available in arbitration and then seek to use that discovery in arbitration—is prohibited by the case law. Indeed, according to the clear logic of the *Liggett* and *Carcich* Courts, such discovery is exactly the kind of prejudicial activity that will trigger a waiver of the right to arbitrate. *Liggett & Myers, Inc. v. Bloomfield,* 380 F.Supp. 1044 (S.D.N.Y.1974) ("the movants obtained many benefits from the pretrial discovery process in this lawsuit which would not have been available had they demanded arbitration ... Their acts and conduct have been prejudicial to the defendant and constitute a waiver of the arbitration provision ..." *Id.* at 1047); *Carcich v. Rederi A/B Nordie,* 389 F.2d 692 (2d Cir.1968) ("[s]ufficient prejudice to infer waiver might be found ... if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration." *Id.* at 696 n. 7).[6]

Respondents argue that because the Dutch hearings were purely preliminary and could not lead to a judgment or mone-

---

**5.** In addition, from December 4, 1991 to January 27, 1992, the Respondents requested and received from Petitioner various documents relating to the bond purchases. Everdingen's "Affidavit in Support of Petition to Stay Arbitration," May 4, 1992, pp. 6–7.

**6.** While both sides seem to agree that the discovery procedure employed in the Netherlands proceeding would not be available in arbitration with respect to the six witnesses who gave testimony previously, unfortunately, neither side has analyzed the issue in depth. In fact, while arguing that the Netherlands proceeding will provide them with valuable discovery they would otherwise be unable to obtain in arbitration (Respondents' Memorandum of Law, pp. 18–19), Respondents suggest in a footnote that perhaps, after all, depositions of the witnesses might be available in arbitration. Respondents' "Counter–Petitioners' Reply Memorandum," p. 8

n. 3 ("While depositions are not generally utilized in arbitration ..., they are available in appropriate cases." *Id.*). Even assuming the arbitrator has both the discretion and the power to order the depositions of the six witnesses who gave testimony at the Netherlands proceeding, assumptions that both parties contradict (Respondents' "Memorandum of Law," pp. 18–19; "Petitioner's Supplemental Reply Memorandum in Support of Petition to Stay Arbitration," July 22, 1992, p. 2), the Court would still find that the Petitioner had been prejudiced by the Netherlands proceeding. Given the fact that depositions are unusual in arbitration proceedings, there would be a significant possibility that the arbitrator would choose not to allow the depositions of the Netherlands witnesses. This would put the Petitioner at a unacceptable disadvantage in the arbitration.

tary damages, there could be no finding that they had waived their right to arbitration by participating in litigation. *See* Respondents' "Counter–Petitioners' Reply Memorandum," p. 4. *See also* Rutger J. Schimmelpenninck's "Affidavit in Opposition to Petition to Stay, and in Support of Counter–Petition to Compel Arbitration," May 27, 1992 ("Under Dutch law, Zwitser-Leven and ESC have never commenced litigation it the Netherlands against ABN CMC (or ABN), for which issuance of a Writ would be required." *Id.* at 8.). There are undoubtedly significant substantive and semantic differences in the procedures of Dutch and United States courts, but the inescapable reality is that Respondents engaged in substantial pre-trial discovery. Respondents now seek to use this discovery to "level the playing field" in the arbitration proceeding. *See* "Counter–Petitioners' Reply Memorandum," p. 8. This they cannot do.

Respondents also argue that Petitioner was not prejudiced by the Netherlands proceedings because Petitioner "had every opportunity to participate, and in fact *did* participate, in the Dutch hearings." "Counter–Petitioners' Reply Memorandum," p. 7 (underlined in original). *See* Schimmelpenninck's Affidavit ("Counsel for all parties had the opportunity to propose questions for each of these witnesses. Thus, counsel for ABN and ABN CMC were free, for example, to interrogate the chief executives of ZwitserLeven and ESC to the extent they saw fit." *Id.* at 7.).

The Court observes that when Respondents initiated the Netherlands proceeding, they did not give notice to Petitioner of their intent to arbitrate. Indeed, Respondents indicated in the original Request for Hearing in Amsterdam, that they intended "to file legal proceedings." Request for Hearing, p. 1. Petitioner claims that if it had been notified of Respondent's intention to arbitrate, it would have raised objections to the proceedings, and, in the event that those objections failed, would have conducted additional cross-examination of witnesses and might have called their own witnesses.[7] "Supplemental Declaration of H.G. Van Everdingen," pp. 4–5. Given the facts that the Petitioner neither called witnesses nor requested any document production in the Netherlands proceeding (*See* "Petitioner's Memorandum in Support of Petition to Stay Arbitration," May 4, 1992, p. 6), Petitioner's "opportunity to participate" seems to have been significantly prejudiced by its lack of notice.[8]

The Court further observes that Respondents seem to confuse the legal meaning of "prejudice" in the context of finding a waiver to arbitrate. Respondents suggest that parties can conduct as much discovery as they want before seeking to arbitrate as long as the process of discovery is even-handed and affords the other party the same access to discovery. The Court disagrees with Respondents' legal interpretation of "prejudice." In the context of this case, prejudice signifies taking advantage of discovery procedures in litigation not otherwise available in arbitration. This prejudice may result whether or not the discovery process provides both sides the same opportunities for discovery.

Respondents have cited *Rush v. Oppenheimer & Co.* in support of their opposition

---

**7.** Petitioner asserts that it believed that in the event that Respondents chose to pursue their claims, they would pursue litigation in Amsterdam. In explaining its passive approach to the Netherlands proceeding, Petitioner explains that "it would have had the opportunity to conduct examinations of witnesses at any further legal proceeding brought by ZwitserLeven in the Netherlands, as provided by Netherlands law." "Supplemental Declaration of H.G. Van Everdingen," p. 4.

**8.** Had Respondents notified Petitioner of their intention to arbitrate, they would have had a stronger argument that Petitioner had not been prejudiced by the Netherlands proceeding. *See Prudential–Bache Securities, Inc. v. Stevenson,* 706 F.Supp. 533 (S.D.Tex.1989) ("Clearly, judicial due process concerns are heightened in situations in which it is the defendant who, having been hailed into court, is deprived of notice of the plaintiff's interest in arbitration." *Id.* at 535.); *Sea–Land Service, Inc. v. Sea–Land of P.R., Inc.,* 636 F.Supp. 750 (D.P.R.1986) ("[t]his is not a situation where a party initiates judicial proceedings without mentioning or referring to arbitration ..." *Id.* at 757.). However, Respondents did not give notice, and the Court, accordingly, declines to address the issue.

to the petition to stay arbitration. *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir.1985). *See Com-tech Associates v. Computer Associates Intern.*, 753 F.Supp. 1078 (E.D.N.Y.1990), *aff'd* 938 F.2d 1574 (2nd Cir.1991) ("the starting point of the waiver analysis necessarily begins with the leading case of *Rush v. Oppenheimer & Co. . . .*" *Id.* at 1085.). In *Rush*, the Court found insufficient prejudice to establish a waiver of the right to arbitrate despite the fact that defendants had waited eight and one-half months to move to compel arbitration, during which time they had filed a motion to dismiss, had answered the complaint with denials and affirmative defenses, and had taken discovery.

This case is distinguishable from *Rush.* The *Rush* Court found that no prejudice had occurred as a result of defendant's discovery because the discovery concerned only non-arbitrable claims. Thus, the *Rush* defendants were unable to use the litigation discovery to their advantage in arbitration. In contrast, in this case, the discovery conducted in Amsterdam concerns only arbitrable claims, and it can and will, according to Respondents, be used in the arbitration proceeding. *See Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638 (7th Cir.1981) ("[N]o waiver of the right to arbitrate can occur from conducting discovery on non-arbitrable claims." *Id.* at 642.); *Gilmore v. Shearson/American Exp., Inc.*, 668 F.Supp. 314, 319 (S.D.N.Y.1987).[9]

## Conclusion

Despite the strong federal policy favoring arbitration, the Court finds that this is one of those rare cases in which the conduct of one of the parties results in prejudice to the other side. This prejudice is sufficient to constitute a waiver of the right to arbitrate. We observe that while federal courts encourage the enforcement of arbitration clauses, they also discourage parties from taking measures which are inconsistent with and prejudicial to both parties' right to arbitrate. Such inconsistent and prejudicial measures, such as those taken by Respondents in this case, defeat the very purposes of contractual arbitration clauses, which seek to save time and money and provide certainty to both parties with respect to choice of law and forum.

Accordingly, the Court grants ABN CMC's petition to stay arbitration and denies ZwitserLeven and ESC's counter-petition to compel arbitration. Because the Court has granted ABN CMC's petition to stay arbitration, it has become unnecessary to rule on ABN CMC's other two arguments in support of its petition to stay.

SO ORDERED.

---

9. The Court notes that the case of *Tenneco Resins, Inc. v. Davy Intern., AG*, 770 F.2d 416 (5th Cir.1985), bears a significant factual resemblance to the case before the Court. In *Tenneco*, one party had engaged in discovery during litigation that would not have been available during arbitration. *Id.* at 421. Nevertheless, the Court found no waiver of the right to arbitrate because only a minimal amount of discovery had been conducted. *Id.* *Tenneco* is distinguishable from this case, in which the discovery conducted has been significantly more extensive.