**SATCOM INTERNATIONAL GROUP PLC, Plaintiff,**

v.

**ORBCOMM INTERNATIONAL PARTNERS, L.P., Defendant.**

No. 98 CIV. 9095(DLC).

United States District Court, S.D. New York.

May 27, 1999.

Leon P. Gold, John Siegal, Proskauer Rose LLP, New York City, David J. Grais, Michael P. De Simone, Deborah J. Verdile, Gibson, Dunn & Crutcher LLP, New York City, Counsel for plaintiff.

Peter M. Brody, J. Steven Baughman, Ropes & Gray, Washington, DC, Counsel for defendant.

## OPINION AND ORDER

COTE, District Judge.

This case involves the termination of a series of licensing agreements between plaintiff SATCOM International Group PLC ("SATCOM") and defendant ORB-COMM International Partners, L.P. ("ORBCOMM"). Under their agreements, the parties had the option either to arbitrate or to litigate certain claims. On De-cember 23, 1998, the plaintiff filed this action seeking damages and a permanent injunction as well as interim injunctive relief. On March 18, the Court denied the motion for a preliminary injunction. SAT-COM has now filed a motion to stay proceedings before this Court pending arbitration. ORBCOMM has filed a cross-motion to stay the arbitration. For the reasons stated, SATCOM's motion is denied and ORBCOMM's motion is granted.

## BACKGROUND

### 1. Licensing Agreements

ORBCOMM is a Delaware limited partnership with its principal place of business in Virginia. It is the licensor of the ORB-COMM system, a network of low-Earth orbit satellites that has communications applications. SATCOM is a corporation organized under the law of England and Wales with its principal place of business in England. SATCOM is the successor in interest to a series of licensing agreements for the ORBCOMM system that cover a vast territory in the Middle East and Central Asia. For each territory, those agreements are as follows: a Service Licensee Agreement ("SLA"), a Ground Segment Procurement Contract ("GSPC"), and an ORBCOMM Gateway Software License Agreement ("Software Agreement") (collectively, "Licensing Agreements").

Each of these agreements was heavily negotiated by ORBCOMM and SATCOM. Both the SLA and the GSPC contain nearly identical provisions that permit the parties to choose either litigation or arbitration under certain circumstances. Section 15(a) of the SLAs reads in pertinent part as follows:

> Subject to the provisions of Section 18(n), in the event of a claim or controversy regarding any matter covered by this Agreement, ORBCOMM and Licensee shall use all reasonable efforts to resolve such claim or controversy within 60 calendar days of receipt by either party of notice of the existence of any

such claim or controversy. In the event the parties are unable to agree on the resolution of such claim or controversy within such period of time, *either party may remove the claim or controversy for settlement by final and binding arbitration in New York, NY,* in accordance with the then existing United States domestic rules of the American Arbitration Associations ("AAA") (to the extent not modified by this Section).

(Emphasis supplied.) The second relevant section, Section 15(c), reads as follows:

*Except with respect to* the application of *Section 18(n) hereof, the rights of the parties under this Section 15 shall be the exclusive method of dispute resolution* with respect to any claim or controversy regarding any matter covered by this Agreement.

(Emphasis supplied.) The final relevant section is Section 18(n), entitled "Equitable Relief," and reads as follows:

Each of the parties acknowledges that the ORBCOMM System and the ORBCOMM Services provided pursuant to this Agreement are unique and recognizes and affirms that in the event of any breach of this Agreement by it, money damages may not be adequate and the other party may have no adequate remedy at law. Accordingly, each of the parties agrees that *the other party shall have the right, in addition to any other rights and remedies existing in its favor, to enforce its rights and the other party's obligations hereunder not only by an action for damages but also an action or actions for specific performance, injunctive relief and/or other equitable relief.*

(Emphasis supplied.) SATCOM and ORBCOMM agree that the comparable sections of the GSPCs, located at Sections 10 and 11(o), are not materially different from the quoted provisions.

When read together, these provisions provide that arbitration is—with one exception—the exclusive method of resolving disputes with respect "to any claim ...

regarding any matter covered" by the Licensing Agreements. When the claim is to enforce a party's rights or obligations under the agreements, however, the parties have the option of bringing an action in court for damages as well as equitable relief.

On October 16, 1998, ORBCOMM sent letters to SATCOM notifying SATCOM of its intent to terminate the Licensing Agreements in sixty days. On December 18, 1998, at the end of the sixty day period, ORBCOMM sent a second letter terminating the Licensing Agreements.

## 2. Procedural History

Exercising its right to litigate under Section 18(n) of the SLAs, SATCOM filed this action on December 23, 1998. The complaint seeks to recover on two causes of actions: (1) breach of contract on the ground that ORBCOMM wrongfully terminated the Licensing Agreements, and (2) tortious interference by ORBCOMM with SATCOM's prospective business relations with a company called Keppel Communications that had considered buying SATCOM prior to termination of the Licensing Agreements. In the last paragraph of each cause of action, SATCOM seeks damages "in an amount to be determined at trial." SATCOM's request for relief at the end of the complaint reads as follows:

SATCOM respectfully requests that this Court enter an order: (a) *granting SATCOM a* preliminary and *permanent injunction* enjoining ORBCOMM ... (b) granting SATCOM *final judgment against ORBCOMM for all actual and punitive damages determined at trial of this action* to have been sustained, together with prejudgment interest; (c) *granting SATCOM final judgment* against ORBCOMM for all allowable costs, attorneys' fees and other litigation expenses to the extent recoverable under applicable law; and (d) granting SATCOM such other and further relief

as to the Court may be just and equitable.

(Emphasis supplied.)

On the same day, plaintiff moved by order to show cause for a temporary restraining order ("TRO") pending a preliminary injunction. The Court declined to enter a TRO because of plaintiff's delay in seeking a TRO after the expiration of the contractual notice period, and scheduled a preliminary injunction hearing for February 8, 1999. At the initial conferences with the Court, the Court stated its view that if an arbitration clause existed and arbitration would ultimately take place, discovery should be limited.[1] Neither party informed the Court of an intent to arbitrate or a desire to have a limited hearing for a preliminary injunction in aid of arbitration. Each party pressed for full discovery from the other side. The Court restricted discovery to that appropriate to a preliminary injunction motion, but allowed sufficient discovery to develop the merits of every issue in the lawsuit. For instance, the Court permitted full document discovery of the relationship between the plaintiff and the defendant, but restricted each party to two depositions of the other side, and to minimal discovery of the defendant's relationships with its other licensees.

During the intervening two months, the parties engaged in vigorous discovery. The Court held a number of conferences with the parties to resolve discovery disputes, and issued one opinion addressing ORBCOMM's assertion of the attorney-client privilege over communications at an ORBCOMM Executive Committee meeting. At both parties' request, the hearing date was adjourned by over a month until March 15, 1999. By the time of the hearing, ORBCOMM had produced roughly 9,000 pages of documents. In addition,

discovery during this time was carried out with an eye toward litigation after the preliminary injunction hearing. For example, SATCOM served a second set of document demands on February 19, 1999, that were returnable after the date of the hearing.[2]

As noted, the hearing began March 15, 1999. Without objection by the parties, the direct testimony of all witnesses had already been presented according to this Court's customary practice, that is, by affidavit. SATCOM submitted direct testimony from the Chairman, Chief Executive Officer, Chief Operating Officer, and Director of Middle East Operations, as well as from two directors and a shareholder. ORBCOMM submitted direct testimony from the Director of Space and Operations of its parent company, its Chief Financial Officer, and the two Vice Presidents and the Regional Director in charge of the Middle East and Central Asian regions. Both sides also submitted an extensive documentary record. At the hearing, all witnesses but one were cross-examined. The hearing lasted 3 days. At the end of the hearing, the Court read a fifty-nine page opinion containing findings of fact and conclusions of law based on the pre-hearing submissions, the arguments of counsel, the extensive documentary evidence, and the testimony of the witnesses. The Court denied plaintiff's motion for a preliminary injunction.

After delivering its opinion on March 18, 1999, the Court indicated its view that "[t]he next stage in this litigation may be the scheduling of the completion of discovery in this case, scheduling of summary judgment motions and the setting of a trial date." The Court instructed the parties "to spend the next week reflecting on a proposed schedule and talking with each other, and then to advise me in writing by no later than March 26 of your proposal

---

1. The defendant had brought the existence of an arbitration clause to the attention of the Court. The plaintiff took the position at that time, however, that its tortious interference claim was not arbitrable.

2. On filing the present motion for a stay, SATCOM withdrew these document demands.

for such a schedule." On March 26, 1999, the Court granted a request by SATCOM to extend "the date by which a proposed scheduling order will be submitted until March 31." As of the time of the March 26, 1999 letter, SATCOM had never indicated to the Court or to ORBCOMM a desire to arbitrate any of the issues in this case.

On March 29, 1999, SATCOM filed a motion for an order staying this action pending arbitration. SATCOM also filed a demand for arbitration with the American Arbitration Association on the same day seeking damages and "injunctive relief." An amended demand dated April 2, 1999, seeks solely money damages for ORBCOMM's "wrongful termination of and tortious interference with [SATCOM's] licenses ...." On April 19, 1999, ORBCOMM filed a cross-motion to stay the arbitration. On April 20, 1999, SATCOM filed a notice of appeal from this Court's March 18, 1999 decision denying a preliminary injunction.[3]

### DISCUSSION

SATCOM relies on the dispute resolution language in the Licensing Agreements to argue that this Court should stay proceedings pending arbitration. In response, ORBCOMM argues that the governing agreements no longer permit arbitration and that SATCOM has in any event waived its right to arbitrate. ORBCOMM also seeks a stay of the arbitration proceedings. The Court will set forth the basis for its jurisdiction during the pendency of the plaintiff's appeal from the decision denying the motion for a preliminary injunction, review the legal standard that applies to construction of agreements to arbitrate, and then address the two principal disputes presented by the parties: (1) whether its agreements with ORBCOMM permit SATCOM to arbitrate this dispute at this juncture, and (2) whether under the waiver doctrine SAT-

COM has lost its right to arbitrate the disputes presented in this action.

### 1. Jurisdiction During Pendency of Appeal

■ As a general matter, the filing of a notice of an appeal divests this Court of its jurisdiction until the issuance of the mandate by the court of appeals. *See United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir.1996). "The divestiture of jurisdiction rule is, however, not a per se rule." *Id.* The district court retains jurisdiction where "the appeal is from an order granting or denying a preliminary injunction." *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir.1996). *See also New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir.1989). As a result, this Court has jurisdiction to decide the cross-motions during the pendency of the appeal.

### 2. Applicability of the Convention

■ Neither party addresses the applicability of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. §§ 201–208, to the current dispute. The Second Circuit has recently followed the Seventh Circuit, holding that

> "any commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention."

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir.1997) (quoting *Jain v. de Mere*, 51 F.3d 686, 689 (7th Cir.1995)). The Licensing Agreements involve parties from the United Kingdom and the United States, signatories to the Convention, and contemplate significant contractual performance outside the United States. As such, the

---

**3.** In a letter to the Court dated May 19, 1999, SATCOM indicated that it "filed the notice of appeal because it had to in order to preserve the appeal" and that it will not prosecute its appeal if this Court grants its motion to stay.

Licensing Agreements come within the purview of the Convention.

■ The Convention is enforced in United States courts in accordance with the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–14 (1988). *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 843 n. 3 (2d Cir.1987). The FAA applies to actions brought under the Convention to the extent that the two chapters are not in conflict. *See* 9 U.S.C. § 208. *See also Yusuf Ahmed Alghanim*, 126 F.3d at 20 (FAA and Convention have " 'overlapping coverage' ") (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 934 (2d Cir. 1983)). Under the FAA,

> A court asked to stay proceedings pending arbitration must resolve four issues: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Oldroyd v. Elmira Savings Bank, FSB*, 134 F.3d 72, 75–76 (2d Cir.1998). The Court will apply the same test under the Convention.[4]

3. *Standard for Interpreting an Agreement to Arbitrate*

■ Under the FAA, the standard for interpreting an agreement to arbitrate is well-established. The FAA provides that a

> written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. *See also* Convention art. II, *reprinted at* 9 U.S.C. § 201 note. As a method of alternative dispute resolution, federal policy strongly favors arbitration. *See Oldroyd*, 134 F.3d at 76. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *accord Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir.1995). Arbitration clauses are therefore to be construed as broadly as possible, and arbitration will be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *David L. Threlkeld*, 923 F.2d at 250 (internal quotation omitted).

■ Of course, federal law "does not require parties to arbitrate when they have not agreed to do so"; it simply requires courts to enforce an arbitration clause, like any other contract clause, in accordance with its terms. *Volt Information Sciences, Inc., v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Leadertex*, 67 F.3d at 27 (internal quotations and citations omitted).

---

4. Where the Convention provides the sole basis for jurisdiction, there was previously an open question as to whether the court that orders arbitration under the Convention must dismiss the action or may retain jurisdiction in aid of arbitration. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 253 n. 2 (2d Cir.1991). Nonetheless, it now appears that the Court may retain jurisdiction and stay the action under its inherent power to control its docket. *See, e.g., Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316 (2d Cir.1998) (quoting *Clinton v. Jones*, 520 U.S. 681, 706–07, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997)). In this diversity case, of course, there is an independent basis for jurisdiction.

### 4. Application of the Licensing Agreements to the Request to Arbitrate

██ The parties agree that Section 18(n) of the SLAs provides them with a choice to litigate or to arbitrate certain disputes. Both parties further agree that SATCOM had the right to litigate both of the claims it brought in this action. Both parties also agree, at least implicitly, that under their agreements a party cannot choose to litigate and arbitrate the same dispute at the same time. ORBCOMM argues that while the agreements give the parties the option to litigate or arbitrate, they do not envision that a party can re-make that decision in midstream. It argues that the interaction of the provisions produces a "salutary and logical" arrangement to "avoid[ ] precisely the sort of piecemeal litigation SATCOM seeks now to compel."

ORBCOMM's position is persuasive. There is no provision in the Licensing Agreements to permit a party to make the choice between litigation and arbitration a second time for the same dispute, or to jump back and forth between the two options for dispute resolution at its whim or when it meets with an adverse ruling. Because endorsement of such a right would be so unusual and potentially expensive to both parties, it would be expected that the right to remake the choice—if such right existed—would be specifically addressed in the agreements and it is not.

In response, SATCOM attempts to argue that the contract explicitly contemplates its approach:

the License Agreements specifically grant each party the right to seek both *preliminary relief in court and arbitration of the ultimate merits* of the dispute. The arbitration provisions expressly authorize either party to "re-move" a claim to arbitration, and are made subject to the parties' right, "in addition to any other rights and remedies," to seek equitable relief.

(Emphasis omitted and supplied.) Even assuming that this is a reasonable interpretation of the Licensing Agreements, this is not the course that SATCOM has pursued. Instead, SATCOM at first sought full relief in this Court and now seeks full relief instead in arbitration. Not even SATCOM's proffered interpretation of the provision permits this approach, and SATCOM has identified no other provisions of the Licensing Agreements that allow such a switch.

SATCOM also refers to the well-established legal authority for a party's right to bring an action for an injunction in aid of arbitration. *See American Express Fin. Advisors, Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir.1998); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1051–52 (2d Cir.1990). *See also Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir.1990) (Convention does not preclude injunction in aid of arbitration). Reference to this law highlights the strength of ORBCOMM's argument. If SATCOM had wished to arbitrate the dispute underlying this action, it could have done so and at the same time brought an injunctive action to maintain the status quo pending the completion of arbitration. That is not, however, the course it adopted. Instead, SATCOM filed an action for a jury trial on the merits and an award of damages and permanent injunctive relief.[5] Having made this choice, it has no right under the agreements to abandon this litigation and start afresh with an arbitration. "[I]t is the duty of the courts to enforce not only the full

---

5. Plaintiff erroneously argues on the basis of *Stewart v. United States INS*, 762 F.2d 193, 198–199 (2d. Cir.1985), that it was required to construct its pleading as it did as a jurisdictional prerequisite in order to seek injunctive relief. *Stewart* contains no such requirement and instead only requires that a plaintiff plead the cause of action on which it seeks injunctive relief. Plaintiff could have sought simply an injunction in aid of arbitration. Rule 8, which requires only "a demand for the relief the pleader seeks," would therefore have been satisfied.

breadth of the arbitration clause, but its limitations as well." *State of New York v. Oneida Indian Nation of New York,* 90 F.3d 58, 62 (2d Cir.1996).

Having reached this conclusion, it is unnecessary for the Court to resolve several subsidiary arguments addressed by the parties. For instance, ORBCOMM argues both that the tortious interference claim in the arbitration demand is not the same claim as that pleaded in this lawsuit, and that the tortious interference claim in the lawsuit is not arbitrable since it does not concern a "matter covered" by the Licensing Agreements. In response, SATCOM only refers generally to the "claims" without specifying whether it agrees that there is any difference between the complaint and the arbitration demand and insists that it will not proceed with any claims before this Court if permitted to arbitrate. It does not address directly the argument that the tortious interference claim is not arbitrable. ORBCOMM also argues that SATCOM has not provided the predicate notice to trigger arbitration that is required by the Licensing Agreements. Because the Licensing Agreements no longer permit SATCOM to arbitrate either dispute presented in this action, these disputes may remain unresolved.

### 5. *Waiver*

■ Even if SATCOM's agreements did not bar it from choosing to arbitrate disputes it had previously chosen to litigate, through its pursuit of this litigation SATCOM has waived its right to arbitrate. Even where an agreement contains a valid arbitration clause, "[a] party is deemed to have waived its right to arbitration if it 'engages in protracted litigation that results in prejudice to the opposing party.'" *S & R Co. of Kingston v. Latona Trucking, Inc.,* 159 F.2d 80, 83 (2d Cir. 1998) (quoting *Cotton v. Slone,* 4 F.3d 176, 179 (2d. Cir.1993)). Waiver operates as "an equitable defense" and is appropriately decided by the Court. *Doctor's Associ-*

*ates, Inc. v. Distajo (Distajo I),* 66 F.3d 438, 454–56 (2d Cir.1995).

While waiver of arbitration is not to be lightly inferred, the issue is fact-specific and there are no bright-line rules. Factors to consider include (1) the time elapsed from the commencement of the litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, any substantive motions, and discovery); and (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay, and expense.

*S & R Co.,* 159 F.3d at 83 (internal citations omitted). Any doubt as to whether there has been a waiver should be resolved in favor of arbitration. *See PPG Indus., Inc. v. Webster Auto Parts Inc.,* 128 F.3d 103, 107 (2d Cir.1997). In deciding whether there has been a waiver, a court should have a "healthy regard for the policy of promoting arbitration." *Leadertex,* 67 F.3d at 25.

■ Turning to the first factor—the time elapsed—approximately four months passed between the filing of this action and the filing of plaintiff's demand for arbitration. This time period is not, by itself, long enough to infer waiver. *See, e.g., PPG Indus.,* 128 F.3d at 104 (five months not enough to infer). Nonetheless, during this period of intense litigation and discovery, SATCOM can point to no evidence of any intent to arbitrate prior to the filing of the instant motion. The initial complaint seeks both preliminary and final relief before this Court. The fact that the present intent to arbitrate was only discovered once SATCOM failed to prevail at the preliminary injunction hearing makes the elapsed four month period not insignificant. *See Leadertex,* 67 F.3d at 26 (seven month period). Furthermore, as noted above, had it previously possessed an intent to arbitrate, SATCOM could have preserved its right to do so by seeking preliminary relief in aid of arbitration. It chose not to do so.

Turning to the second factor—the amount of litigation—there is no requirement that the party against whom waiver is urged have made dispositive motions. *See S & R Co.,* 159 F.3d at 84. Instead, a filing of pleadings, exchange of discovery, settlement conferences, and litigation of lesser issues related to the merits may be significant. *Id.* Here, the parties both filed pleadings and exchanged significant discovery. The documents requested, although limited to some degree by the Court, spanned all issues related to the merits of the case. ORBCOMM produced roughly 9,000 pages of documents. Four depositions were taken of the two ORBCOMM employees who worked on a daily basis with SATCOM, and of both the founder and Chief Operating Officer of SATCOM. The preliminary injunction hearing was also a "mini-trial" of all substantive issues except for damages in this case.[6] The parties litigated fully both causes of action and a standing argument related to the assignment under which SATCOM obtained its rights under the Licensing Agreements. In an opinion which addressed all issues raised by the parties, the Court noted that "[t]he factual record is extensive and it is unlikely to be materially different at trial." As a result, although this litigation has had a relatively short life, nearly all substantive issues have already been litigated extensively. Furthermore, the parties also appeared before Magistrate Judge Peck on January 20, 1999, for a settlement conference to attempt to resolve their differences.

Nonetheless, it is the third factor—prejudice—that clearly tips the balance in favor of a finding of waiver. Sufficient prejudice exists where a party against whom waiver is asserted: (1) engages in discovery procedures not available in arbitration, (2) makes motions going to the merits of an adversary's claims, or (3) delays invoking arbitration rights while the adversary incurs unnecessary delay or expense. *See Cotton,* 4 F.3d at 179. All three kinds of prejudice exist here. Furthermore,

> the prejudice that supports a finding of waiver can be substantive prejudice to the legal position of the party opposing arbitration, such as when the party seeking arbitration loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration . . . .

*Doctor's Assocs., Inc. v. Distajo (Distajo II),* 107 F.3d 126, 131 (2d Cir.1997) (internal quotation omitted). That substantive prejudice exists as well.

Here, the parties took extensive discovery under the Federal Rules of Civil Procedure. Although SATCOM attempts to show that the arbitrators could order extensive discovery, it cannot contest that arbitration offers much less discovery than that available under the Federal Rules. *See, e.g., NBC, Inc. v. Bear Stearns & Co.,* 165 F.3d 184, 190–91 (2d Cir.1999) (discussing discovery limits imposed by 9 U.S.C. § 7 and in arbitration in general); *In Matter of Application of ABN Int'l Capital Mkts. Corp.,* 812 F.Supp. 418, 419 n. 1 (S.D.N.Y.1993) (depositions normally not permitted in arbitration). In addition, plaintiff's motion for a preliminary injunction placed before this Court all of the issues, once again with the exception of damages, that need final resolution. *Compare Distajo II,* 107 F.3d at 133 (waiver does not occur where same issues are not litigated in both forums). Although not dispositive, ORBCOMM states that it has already spent nearly $900,000 in attorney's fees and costs litigating this action. *See Leadertex,* 67 F.3d at 26. Arbitration would also cause substantive prejudice to ORBCOMM because it has generally prevailed in this action to date and would be forced to start over in arbitration with SATCOM.

---

**6.** In its memorandum of law in support of the preliminary injunction, SATCOM also sought to place the damages issue before this Court by having the Court rule on a limitation of damages provision contained in the Licensing Agreements. The Court declined.

Finally, ORBCOMM is far more prejudiced than it would have been had SATCOM sought only a preliminary injunction in aid of arbitration. If SATCOM had sought an injunction in aid of arbitration, the Court could have minimized the expenditure of resources by the parties and the Court, and decided the motion for a preliminary injunction on the same basis that it decided the TRO—the lack of irreparable harm based on SATCOM's delay in seeking relief. *See Nassau Boulevard Shell Serv. Station, Inc. v. Shell Oil Co.,* 869 F.2d 23, 24 (2d Cir.1989). *Shell Oil* was the basis for this Court's refusal to enter a TRO as well as one ground for the finding that SATCOM had failed to demonstrate irreparable harm at the preliminary injunction hearing. Instead, believing that it would assist the parties in their further litigation in this Court, including in an evaluation of whether a settlement was appropriate and on what terms, the Court allowed substantial discovery on the merits, conducted a full evidentiary hearing, and made extensive factual findings and particularized conclusions of law as to each of the alleged defaults that were the basis for the wrongful termination claim. In sum, this case was litigated by both parties and managed by the Court in reliance on SATCOM's decision that it would seek vindication of its claims through full litigation on the merits before the Court. In such circumstances, it would unfairly prejudice ORBCOMM to require it to defend again in another forum.

Weighing these three factors, the Court finds abundant evidence that SATCOM has waived its right to arbitrate. This conclusion is particularly appropriate given SATCOM's status as plaintiff. The touchstone of waiver is the taking of action inconsistent with the right to arbitrate. Customarily, waiver is urged against the defendant and the inquiry for the court is whether the defendant litigated enough and the other side has suffered sufficient prejudice such that the defendant's waiver of the right to arbitrate may be inferred. Rarely does a plaintiff begin a litigation on the merits and then alter course and attempt to compel an arbitration. *See Distajo I,* 66 F.3d at 456–57 (directing waiver inquiry based on party's instigation of state litigation); *Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp.,* 996 F.2d 1478, 1481 (2d Cir.1993) (affirming *In re ABN Int'l Capital Mkts. Corp.,* 812 F.Supp. at 420) (waiver found after party took testimony in Europe under the guise that it was necessary for litigation); *Freeman v. Complex Computing Co.,* 931 F.Supp. 1115, 1119 (S.D.N.Y.1996) (plaintiff did not waive the right to arbitrate by filing an action when its reason for doing so was "reasonably plain"), *aff'd in part rev'd in part,* 119 F.3d 1044 (2d Cir.1997). In this case, the Court need not examine the record to determine whether SATCOM's intention to waive its right to arbitrate may be fairly inferred. Instead, there is on the face of the complaint clear evidence of the plaintiff's conscious decision to litigate rather than arbitrate this dispute. *See PPG Indus.,* 128 F.3d at 109 (considering evidence of intent).

In summary, SATCOM has waived any right it previously had to arbitrate the issues in this case.[7] Prior to the filing of the arbitration demand, SATCOM's conduct was inconsistent with a party seeking to preserve a right to arbitrate and a finding of waiver is therefore appropriate.

---

7. SATCOM also attempts to argue that the American Arbitration Association Rules incorporated into the Licensing Agreements preclude a finding of waiver. This argument was explicitly rejected by the Second Circuit: "we hold that the presence of the 'no waiver' clause does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration." *S & R Co.,* 159 F.3d at 86. SATCOM attempts to state that either Section 18(n) or the generic no waiver clause of the SLAs would have a similar effect of precluding waiver, but those arguments fail for the same reason. As discussed above, SATCOM cannot plausibly argue that the path it has chosen is authorized by the Licensing Agreements. In addition, the waiver at issue here is equitable, not contractual in nature.

### 6. *Stay of Arbitration*

ORBCOMM also filed a notice of motion to stay the arbitration. SATCOM argues either that no such power exists or that it exists in only limited situations. The Court agrees with ORBCOMM that a stay is appropriate.

The FAA does not explicitly authorize a district court to stay arbitration. In a recent opinion, the Second Circuit declined to reach the question of whether or not such a power exists:

> we do not need to decide whether the FAA gives federal courts the power to stay arbitration proceedings. While § 3 of the FAA gives federal courts the power to stay *trials* pending *arbitration,* we note that a number of courts have held that, in appropriate circumstances, § 4 of the FAA may be applied to enjoin arbitration proceedings.

*Westmoreland Capital Corp. v. Findlay,* 100 F.3d 263, 266 n. 3 (2d Cir.1996). Nonetheless, the First Circuit has unequivocally recognized the power of federal courts to stay an arbitration:

> The Act expressly provides federal courts with the power to order parties to a dispute to proceed to arbitration where arbitration is called for by the contract. 9 U.S.C. § 3. To allow a federal court to enjoin an arbitration proceeding which is *not* called for by the contract interferes with neither the letter nor the spirit of the law. Rather, to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present.

*Societe Generale de Surveillance, S.A. v. Raytheon European Management Systems Co.,* 643 F.2d 863, 868 (1st Cir.1981) (emphasis in original). *See also L.F. Rothschild & Co. v. Katz,* 702 F.Supp. 464, 468 (S.D.N.Y.1988).

Despite the persuasiveness of the First Circuit's logic, the present case arises under the Convention rather than the FAA. The Convention's equivalent provision to Section 4, Section 206, reads as follows:

> A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.

9 U.S.C. § 206.

The logic of *Societe Generale* applies with equal force to Section 206, particularly where, as here, the district court has a basis for subject matter jurisdiction other than the Convention and has personal jurisdiction over the parties. Section 206 unequivocally directs the court to order arbitration where appropriate. It would follow, as under Section 4, that the court should have a concomitant power to enjoin arbitration where arbitration is inappropriate. A failure to do so would frustrate the goals of arbitration, since there would be delay and increased expense as the parties litigated in both fora. In addition, the potential for injury to ORBCOMM is significant and irreparable, since it would be unable to recoup the costs incurred arbitrating toward an award that will ultimately be vacated by this Court. *Cf. Maryland Casualty Corp. v. Realty Advisory Board on Labor Relations,* 107 F.3d 979, 984–85 (2d Cir.1997). Finally, the Second Circuit has already affirmed district court decisions staying or enjoining arbitration proceedings without finding it necessary to articulate its basis for doing so. *See, e.g., id.; Collins,* 58 F.3d at 23; *Zwitserse Maatschappij,* 996 F.2d at 1481 (2d Cir.1993) (affirming *In re ABN International Capital Markets Corp.,* 812 F.Supp. at 423).

### CONCLUSION

Plaintiff's motion for a stay is denied. Defendant's motion to stay arbitration is granted, and SATCOM is enjoined from proceeding with the arbitration.

SO ORDERED: